**HELWIG v. UNITED STATES.**
No. 9971.

Circuit Court of Appeals, Sixth Circuit.
July 21, 1947.

See also 159 F.2d 616, 7 F.R.D. 187.

John C. Egbert, of Cincinnati, Ohio, for appellant.

Ray J. O'Donnell, of Cincinnati, Ohio, for appellee.

Before SIMONS, MARTIN, and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

The appellant was indicted and convicted for violation of the Mann Act, 18 U.S.C.A. § 398. Being without representation, he was defended by counsel appointed by the court, and upon the jury's verdict of guilty was sentenced to four years imprisonment to begin upon the completion of a prison term imposed for violation of the Dyer Act, 18 U.S.C.A. § 408. His counsel was then relieved of further duties. Being permitted to prosecute an appeal in forma pauperis, the appellant was again without counsel, and a lawyer was assigned to him by this court. At the hearing there was no record, and we were without light on the points in issue and affirmed the judgment. 3 Cir., 152 F.2d 456. The Supreme Court set it aside with a direction to us to require the district court to perfect the record, 328 U.S. 820, 66 S.Ct. 1336, 90 L.Ed. 1601. This has now been done with the able cooperation of the district judge, and new counsel appointed by the court. We have a transcript of the evidence, 125 pages of handwritten brief prepared by the appellant, a typewritten brief of his lawyer and the appeal has been reargued.

Out of a welter of conflicting evidence it sufficiently appears that while the appellant, a resident of Erie, Pennsylvania, was visiting in New Lexington, Ohio, he met one Irene Starner with whom, on a number of occasions, he had sexual intercourse. On the night of Sunday, April 26, he decided to return to his job in Erie and started back with Miss Starner accompanying him. They drove without stopping to Ritman, Ohio, where the appellant claims they visited friends by the name of Plough; that while in Ritman he asked Miss Starner to marry him and declared to the Ploughs that he intended to marry her when he got to Erie. When they arrived at the state line he had Miss Starner get out of the car and hitch-hike across, after which he picked her up in Pennsylvania. Reaching Erie they went to the home of one Driscoll where Helwig introduced the young woman as his fiancee and asked Driscoll to keep them until he could get a marriage license. Driscoll testified that Helwig introduced the girl as his wife, though this the appellant denied. While at the Driscoll home in Erie the two had intercourse. Helwig claims that he endeavored to secure a license but was unsuccessful because the girl was under 21 and her parents were not available to give consent to the marriage. A few days later he took the Starner girl back to Ohio.

■ Little attention need be given to most of the 31 points of error scheduled in the wordy and confused brief of the appellant. His counsel concentrates on three, urging that the judgment be reversed because of insufficient evidence, error in the charge of the court as to the nature of the offense created by the statute, and the denial of a motion for new trial based upon newly discovered evidence. The first ground need not detain us. The evidence, while circumstantial, pointed strongly to violation of law, and the jury could well have found the interstate transportation to have been motivated by one of the immoral purposes condemned by the Act.

■ The challenge to the court's instructions concerns itself primarily with the failure of the court to differentiate between the pupose and intent of an interstate journey, and to advise the jury that an immoral purpose must be the dominating and not merely the incidental purpose of the trip. It is true that Courts of Appeals, in applying the Act in cases of non-commercial vice, have drawn a fine line between immoral purposes harbored at the beginning of a journey, and one arising during transportation and being but incidental to its main purpose. Sloan v. United States, 8 Cir., 287 F. 91; Van Pelt v. United States, 4 Cir., 240 F. 346; Fisher v. United States, 4 Cir., 266 F. 667; United States v. Pape, 2 Cir., 144 F.2d 778. It is also true that in Yoder v. United States, 10 Cir., 80 F.2d 665, a line of demarcation is drawn between purpose and intent,—a line somewhat difficult to follow and one which does not take into account that an interstate journey may be in pursuit of a legitimate purpose, while at the same time the transportation of a woman across state lines while on such journey, may have an immoral purpose dominating such transportation.

The reluctance of some courts to sustain convictions in cases where no pecuniary gain is involved, is doubtless due to the fact that the impact of the decision in Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas. 1917B, 1168, upon specific circumstances, sometimes appears unduly harsh and also stems from the argument of the dissenters

in that case that the primary purpose of the enactment of the statute was to reach commercial vice. It is clear, however, after 30 years of enforcement and after much urging, that neither the Congress, by legislation, nor the Supreme Court, by interpretation, inclines toward modification of the Caminetti rule. In Cleveland v. United States, 329 U.S. 14, 67 S.Ct. 13, 15, it was said, "We do not stop to reexamine the Caminetti case to determine whether the Act was properly applied to the facts there presented. But we adhere to its holding * * * that the Act, while primarily aimed at the use of interstate commerce for the purpose of commercialized sex, is not restricted to that end." The court has, however, adopted the view that to sustain conviction the dominant motive of the interstate journey must be the fulfillment of the purposes condemned by the statute. Mortensen v. United States, 322 U.S. 369, 64 S. Ct. 1037, 88 L.Ed. 1331; Cleveland v. United States, supra.

While the district judge in his instructions to the jury in the present case did not expressly charge that the unlawful immoral purpose must be the dominant purpose of the transportation in order to justify a verdict of guilty, his instructions were equivalent thereto. He told the jury that the statute makes intent and purpose an element of the crime; that if the journey was planned with no immoral purpose, no crime was committed no matter what may have been done thereafter. He told the jury that it is the immoral purpose which renders such interstate commerce act criminal and that to constitute a violation of the statute there must be such intent at the outset. We think these instructions not lacking in clarity and that to enlarge upon niceties of distinction between purpose and intent would make for confusion rather than understanding. We should be reluctant to base reversal upon errors in the charge, especially when not complained of at the time of trial.

■ More important is the third grievance of the appellant. Affidavits of Audrey Plough and Edwin J. Plough, both of Ritman, Ohio, are to the effect that both the appellant and the Starner girl, on their trip

from New Lexington, Ohio, to Erie, Pennsylvania, told them during their stop at Ritman, that they intended to be married in Erie. These affidavits were presented to the district judge in support of a motion for new trial as newly discovered evidence. Of course they do not qualify as such because at the time of the trial what the Ploughs would be able to say was known to the appellant. In any event, the motion was directed to the discretion of the trial judge and is reviewable only for manifest abuse. Barber v. United States, 4 Cir., 142 F.2d 805; Long v. United States, 10 Cir., 139 F.2d 652; Luke v. United States, 5 Cir., 84 F.2d 711, certiorari denied 299 U.S. 542, 57 S.Ct. 45, 81 L.Ed. 399. Rule 33, Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, works no change in the practice except to enlarge the time for the consideration of a motion for new trial based upon newly discovered evidence.

■ It is now urged, however, that the appellant had sought to have the Ploughs summoned as witnesses at the trial, but that this was not done. It does not clearly appear upon the record why the Ploughs were not summoned as witnesses. The incarceration of appellant upon another conviction doubtless contributed to this failure. It would seem to be clear, however, that this evidence, if it had been produced, would have had a material bearing upon the issue as to whether the interstate transportation had a dominant legitimate purpose. Of course the jury might still have found that the transportation of the Starner girl was for one of the condemned purposes, in view of all the circumstances including the previous relations of the parties, their subsequent conduct and the return of the girl to Ohio without any further effort to accomplish a valid marriage. We are, of course, unable to say that the jury would have so found, even though an intent to pursue sexual relations prior to marriage may still be in pursuit of an immoral purpose according to prevailing mores. In view of this aspect of the case we conclude, in the exercise of judicial

supervision of the administration of criminal justice,[1] that the verdict and sentence should be set aside and the cause remanded to the district court for retrial at which process of the court will issue to bring the Ploughs in as witnesses.

Reversed and remanded for further proceedings in conformity herewith.

---

[1] McNabb v. U. S., 318 U.S. 332, 340, 63 S.Ct. 608, 87 L.Ed. 819.