**Robert S. BRODIE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16192.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 9, 1961.

Decided July 20, 1961.

158

Messrs. Norman H. Heller, Washington, D. C., and Lawrence Speiser, with whom Mr. William W. Ross, Washington, D. C., was on the brief, for appellant.

Mr. Donald S. Smith, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Nathan J. Paulson, Asst. U. S. Atty., were on the brief, for appellee. Mr. Oliver Gasch, U. S. Atty., at the time the record was filed, Mr. Carl W. Belcher, Asst. U. S. Atty., at the time the record was filed, Messrs. Charles T. Duncan, Daniel J. McTague and William H. Collins, Asst. U. S. Attys., also entered appearances for appellee.

Before BAZELON, FAHY and BURGER, Circuit Judges.

BURGER, Circuit Judge.

We granted certiorari to the Municipal Court of Appeals to review the stated questions (1) whether the Municipal Court abused its discretion in denying a motion, made the day after trial, for a new trial based on newly discovered evidence and (2) whether the Municipal Court abused its discretion in permitting the prosecution to reopen its case immediately after resting when the court took notice that no evidence had been introduced on one of the counts and on reopening that evidence was then adduced. No objection to reopening was made by the defense.

Appellant was charged by information and waived jury trial. He was found guilty by the court on one count of assault and one count of larceny and sentenced to two consecutive terms of 90 days each. No prior criminal record is indicated. The day after the trial appellant's motion for a new trial on the grounds of newly discovered evidence was denied and on appeal the Municipal Court of Appeals affirmed the judgment of the Municipal Court.

The facts are of critical importance to our consideration of the appeal particularly if we are not limited to the "newly discovered evidence" standards for granting a new trial. A government witness working in a filling station testified he saw two men approach an automobile; one of them seized a coat from the car of the complaining witness Carpenter and both men ran when a chase ensued. Carpenter, owner of the coat, followed them into an alley and apprehended one Martin, who was holding the stolen coat. The second man fled.

The day Martin entered a guilty plea in court, appellant came into the courtroom and sat beside Carpenter, who was in court in connection with the case. Carpenter concluded that appellant was Martin's companion at the time of the coat theft and he so informed a detective then present. Appellant explained his presence in court as being there to

observe the case of a friend whose case was on the calendar that day. A check showed that the case he described was in fact on the calendar. Later he was arrested and charged.

Appellant's defense was the testimony of his mother, his wife and a neighbor who testified he was in his home 7 or 8 miles from the scene of the crime at the hour of its commission. Appellant denied knowing Martin, his alleged accomplice, and denied being present at the time of the crime. Carpenter made a positive identification of appellant. He testified that when he caught up with the two men in the alley, appellant brandished a knife but fled when Carpenter grappled with Martin.

On the second day following his conviction, appellant moved for a new trial on the grounds of newly discovered evidence, submitting an affidavit of Martin in which the latter absolved appellant of any part in the crimes. Martin also appeared as a witness at the hearing on the motion and testified he had met appellant when the latter was sent to jail and that he, Martin, volunteered this explanation because he did not want a guiltless man to suffer. Martin named one Tatum as his companion on the day of the offense but absolved Tatum of guilt in the theft saying that he, Martin, had seized the coat on a sudden impulse and that Tatum was not aware that the act was to occur.

Appellant's attorney gave his own affidavit at the hearing in which he recited that he had interviewed Tatum who told him that he, not appellant, was present with Martin on the day in question but had not known Martin was to seize the coat; Tatum was quoted as saying he had run in fright and because Martin ran. Tatum was in the courtroom during the hearing on the new trial motion and presumably heard appellant's attorney read the affidavit identifying him as Martin's companion on the day of the crime. Tatum's presence in court was made known when he was asked by one of the attorneys to stand to compare his height and build with that of appellant. The

trial judge noted that there was a substantial difference in height. Carpenter, confronted with both men, again identified appellant as Martin's companion. He said it was 7 p. m. on the day in question (March 28, 1960) and dusk but that he "could see all right."

The Municipal Court held a second hearing on the motion at which there was no new information except that appellant's attorney had assured Tatum that appellant would help Tatum with his legal expenses if he, Brodie, were absolved and Tatum should be charged or need legal assistance.

The Municipal Judge appears to have given careful consideration to the evidence at the trial and to the issues argued at two hearings for a new trial, and were we to regard the "due diligence" standard as controlling we might reach a different conclusion. The Municipal Judge was apparently persuaded that appellant and his counsel, knowing, when appellant's trial was held, of Martin's existence and that Martin was the alleged accomplice, had shown lack of diligence in not calling Martin from his cell block to make him a witness or even to interview him.

But the result reached by the Municipal Court is perhaps traceable to counsel's misapprehension of the relief available to his client. He moved for a new trial for newly discovered evidence which put on him the burden of showing his own diligence. Under Rule 33 Fed.R. Crim.P., 18 U.S.C.A., a motion made within *five days* of final judgment, as distinguished from one made later but within two years, empowers the trial court to "grant a new trial to a defendant *if required in the interest of justice.*" As we see it, the trial court's power with respect to a motion within five days is much broader than one made later than five days but within two years relying on newly discovered evidence. Benton v. United States, 1951, 88 U.S.App.D.C. 158, 188 F.2d 625. Plainly a later motion properly puts the movant under a heavier burden for the passage of time inevitably ripens the finality of the judgment and

increases the difficulties of again proving a case. But on a motion for a new trial made within five days "the court sits as a thirteenth juror," Barron & Holtzoff, Federal Practice & Procedure § 2281 (Rules ed. 1958), and the trial court has broader powers.

■ On the whole record with all its puzzling aspects it is not unreasonable to assume that appellant's motion, cast as it was in the restrictive terms of newly discovered evidence, may have misled the Municipal Judge to apply the strict and narrow standards of due diligence rather than view the motion, filed within 48 hours of conviction, as one which invoked broader discretionary powers. We hold that the sound judicial policy underlying Rule 33 in its application to the District Courts is one which should also govern consideration of new trials in criminal cases, made within five days, in the Municipal Court. In such case the element of diligence, while still present, might well be but one of a number of factors to be considered along with the apparent willingness of both Tatum and Martin to testify in appellant's behalf.

The case of Benton v. United States, supra, presents some striking parallels. There a witness was tendered to the defense as available for examination but the defense declined to call the witness. Four days later the person so tendered as a witness executed an affidavit tending to exculpate the accused. We said there:

"Ordinarily we would not disturb the action of the trial court on such a motion. But we think the situation is exceptional. When in such a case as this the additional evidence brought to the court's attention is that of the mother, who saw and talked to the child shortly after the alleged incident, and this evidence varies substantially from that given by the child, upon which the conviction rests almost entirely, we think a fair trial requires that the mother's testimony be made available to the jury. Cf. Helwig v. United States,

6 Cir., 1947, 162 F.2d 837, 840. Under Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., we think a new trial should have been granted "in the interest of justice," so that the mother's testimony could be heard and considered along with that of the others called to testify. The motion for a new trial having been filed within five days after verdict, it need not be treated as grounded upon newly discovered evidence and judged by the standards applicable to a motion so grounded. The provision of Rule 33 permitting a new trial if required in the interest of justice, though temperately to be utilized, is broader in scope than the limitations which have been held applicable where the motion is based on newly discovered evidence. The special factors to which we have referred are adequate to bring this case within the provision upon which we rely." (Footnotes omitted.) 88 U.S.App.D.C. at page 160, 188 F.2d at page 627.

In the circumstances we conclude that the interests of justice will be best served if the judgment is reversed and the case remanded to the Municipal Court of Appeals with directions to remand to the Municipal Court for further consideration in light of the views we have expressed concerning the broad scope of that court's powers as to a motion made within five days after verdict.

Reversed and remanded.

BAZELON, Circuit Judge, concurring in part and dissenting in part.

I agree with my brothers that the Municipal Court is empowered to grant a new trial "if required in the interest of justice," upon motion within five days of final judgment. Since, in my opinion, the denial of such motion upon the present record would be an abuse of discretion, I would reverse with directions to grant the motion and thereby avoid the burden of an unnecessary hearing.